# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUSSELL P. MILLER, <br>       Plaintiff, <br>   v. <br> SOUTH CONNELLSVILLE BOROUGH, <br> JERRY REAGAN, DON RINGER, MARY <br> RILEY, and GEORGE JAY, <br>       Defendants. | Civil Action No. 18-919 <br><br> Judge Marilyn J. Horan |

## **OPINION AND ORDER**

On July 16, 2018, Plaintiff Russell P. Miller filed suit against Defendants, South Connellsville Borough, Jerry Reagan, Don Ringer, Mary Riley, and George Jay. (ECF No. 1). In response to a partial Motion to Dismiss, (ECF No. 11), Plaintiff Miller amended his Complaint on October 26, 2018, (ECF No. 33). In the Amended Complaint, Plaintiff Miller brings five claims under 42 U.S.C. § 1983, alleging violations of his First Amendment and Fourteenth Amendment constitutional rights. *Id.* On November 20, 2018, Defendants filed a new Partial Motion to Dismiss, arguing that the Court should dismiss Counts II and III of the Amended Complaint. (ECF No. 36). Subsequently, Plaintiff Miller withdrew Count II. (ECF No. 46, at 1–2). The parties have briefed the issues raised as to Count III, (ECF Nos. 37, 46, 48), and the Motion is now ripe for decision. For the following reasons, the partial Motion to Dismiss will be granted.

**I. Factual Background**

According to the Amended Complaint, Plaintiff Miller was the chief of police for the Defendant South Connellsville Borough's police department for approximately five years, until

1

January 2018. (ECF No. 33, at ¶¶ 11, 36). In late 2015, Plaintiff Miller, wanting to decrease alcohol-related violations and believing that other illegal activities were afoot, increased DUI enforcement patrols near a local, members-only social club. *Id.* at ¶¶ 12–15. At the time, Defendants Jerry Reagan, Don Ringer, Mary Riley, and George Jay were all private citizens and either members or supporters of the club. *Id.* at ¶¶ 16–17, 20, 25. In the months following the increased law enforcement patrols near the club, Defendants Ringer, Riley, and Reagan, at various times, attended regularly scheduled council meetings, where they complained about Plaintiff Miller's law enforcement activities and demanded Plaintiff Miller's removal from his position as police chief. *Id.* at ¶¶ 16–18, 20. However, the Defendant Borough found that "many, if not all, of the complaints were patently false." *Id.* at ¶ 18. Defendants Ringer, Riley, and Reagan, along with various members and supporters of the club, also subjected Plaintiff Miller "to continuous harassment and threats." *Id.* at ¶ 19.

In May 2016, Defendant Jay was appointed to the Defendant Borough's council. *Id.* at ¶ 25. In his capacity as a council member, Defendant Jay made demands for Plaintiff Miller's removal from his position as police chief, including at public meetings. *Id.* at ¶¶ 26–27. However, the Defendant Borough's council refused to do so. *Id.* at ¶ 26. Then, in November 2017, Defendant Reagan, Ringer, and Riley were elected to the council, and they assumed their positions on the council in January 2018. *Id.* at ¶¶ 30, 35. In the intervening time, Defendant Jay continued to demand, unsuccessfully, Plaintiff Miller's removal. *Id.* at ¶ 32. When the Defendant Borough's council refused to remove Plaintiff Miller, Defendant Jay allegedly stated, "We're doing this when the new council takes over." *Id.* at ¶ 33.

On or around January 22, 2018, Defendant Reagan, now the president of the council, went to Plaintiff Miller's office and accused him of failing to follow proper time card

procedures. *Id.* at ¶¶ 35–37. Defendant Reagan further accused Plaintiff Miller of "not 'following orders,'" and stated that he "was 'sick' of Plaintiff's alleged 'back-talking' and 'insubordination.'" *Id.* at ¶ 37. When Plaintiff Miller attempted to explain time card procedures, Defendant Reagan responded, "You know what, I'm sick of you. You're fired." *Id.* at ¶ 39. Defendant Reagan further informed Plaintiff Miller that the Defendant Borough would oppose any unemployment compensation claims Plaintiff Miller might make. *Id.* Plaintiff Miller collected his things and left the premises. *Id.* at ¶ 40.

On or around February 8, 2018, the Defendant Borough's council held a special meeting at which Defendant Jay moved to terminate Plaintiff Miller's employment with the police department. *Id.* at ¶ 42. Defendant Ringer, now the vice president of the council, seconded the motion, and Defendants Ringer, Reagan, Riley, and Jay all voted in favor. *Id.* at ¶¶ 35, 42. Plaintiff Miller was formally terminated from his position with the police department for allegedly abandoning his position. *Id.* at ¶ 43. Plaintiff Miller maintains that he did not abandon his position, but rather, alleges that he was unlawfully terminated on or around January 22, 2018. *Id.* at ¶ 44.

Thereafter, Plaintiff Miller filed this suit against Defendants Reagan, Ringer, Riley, and Jay, in their individual capacities, and against the Defendant Borough. (ECF Nos. 1, 33). Plaintiff Miller brings five counts under 42 U.S.C. § 1983. (ECF No. 33). First, in Count I, Plaintiff Miller alleges that the council member Defendants, Reagan, Ringer, Riley, and Jay, violated his First Amendment right to be free from retaliation based on political affiliation. *Id.* at ¶¶ 50–57. In Count II, Plaintiff Miller alleges that the council member Defendants violated his Fourteenth Amendment procedural due process rights by depriving him of a pre-termination hearing. *Id.* at ¶¶ 58–65. He further alleges, in Count III, that the council member Defendants

3

violated his Fourteenth Amendment liberty interest in his reputation by making "substantially and materially false statements that stigmatized Plaintiff's reputation." *Id.* at ¶¶ 66–73. Next, in Count IV, Plaintiff Miller alleges that the council member Defendants violated his constitutional rights by conspiring to deny Plaintiff Miller the foregoing First and Fourteenth Amendment rights. *Id.* at ¶¶ 74–80. Lastly, in Count V, Plaintiff Miller alleges municipal liability under § 1983 against the Defendant Borough. *Id.* at ¶¶ 81–87.

Defendants moved to dismiss Counts II and III of the Amended Complaint, arguing legal insufficiency as to both Counts under Rule 12(b)(6). (ECF No. 36; ECF No. 37). Defendants also argued that Count II, Plaintiff Miller's procedural due process claim, failed for lack of subject matter jurisdiction under Rule 12(b)(1), because Plaintiff Miller failed to exhaust the administrative remedies available to him. (ECF No. 36; ECF No. 37). In support, Defendants stated, "This claim is subject to a collective bargaining agreement, and Plaintiff presently has a matter pending before the Pennsylvania Labor Relations Board ('PLRB')." (ECF No. 37). In his Brief in Opposition, Plaintiff Miller withdrew Count II, but argues that Count III sufficiently states a claim and should survive the partial Motion to Dismiss. (ECF No. 46, at 1).

## II. Legal Standard

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted). Additionally, the court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." *Id.* A complaint is sufficient only when it alleges "'enough facts to state a claim for relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), thereby enabling the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

**III. Discussion**

In Count III of the Amended Complaint, the sole claim subject to Defendants' partial Motion to Dismiss, Plaintiff Miller alleges a Fourteenth Amendment procedural due process claim, through 42 U.S.C. § 1983, for deprivation of a liberty interest in his reputation. (ECF No. 33, at ¶ 71). In order to state such a claim, "a plaintiff must show a stigma to his reputation <u>plus</u> deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006); *see also Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1993) ("[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution."). Thus, Courts have dubbed this type of claim a "stigma plus" claim. *Hill*, 455 F.3d at 236. In the public employment context, courts have developed a "stigma plus" test, under which "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination [from employment] is the 'plus.'" *Id.*

To satisfy the first prong of the test, "a plaintiff must show (1) that the stigmatizing statement was made publicly, and (2) that the statement was substantially and materially false."

5

*Kocher v. Larksville Borough*, 548 Fed. App'x. 813, 820 (3d Cir. 2013). As to the second part of the test, the "plus" prong, a plaintiff need only show that he was terminated or constructively discharged from his employment, regardless of whether he had a property interest in said employment. *Hill*, 455 F.3d at 238 ("[A] public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost.").

Nevertheless, when a plaintiff suffers stigma plus termination, "the constitutional mandates of due process are satisfied as long as the aggrieved individual is afforded notice and a fair opportunity to clear his or her name." *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 399 (W.D. Pa. 2012). In other words, "when a 'stigma plus' deprivation occurs in the public employment context, the employee is entitled to a name-clearing hearing." *Arneault*, 864 F. Supp. 2d at 399. A name-clearing hearing, such as "in an administrative context or in a subsequent criminal trial," will typically fully vindicate the employee's liberty interest. *Bartos v. Commonwealth*, 2011 U.S. Dist. LEXIS 69008, at *42 (M.D. Pa. May 25, 2011). Even so, courts "recognize the theoretical possibility that harm to someone's reputation would not be recompensed fully by a name-clearing hearing." *Otto v. Williams*, 704 Fed. App'x. 50, *55–56 (3d Cir. 2017). Although it recognizes this theoretical possibility, however, the Third Circuit "never [has] held that damages are available as a remedy for the harm to the reputational interest in a stigma-plus claim." *Id.* at *55.

Accordingly, unless the plaintiff first pleads "'the inadequacy of state or administrative processes and remedies to redress [his] due process violations'" and clear his name, he "'may not seek relief under Section 1983.'" *Kinavey v. D'Allesandro*, 2010 U.S. Dist. LEXIS 103281, at *13 (W.D. Pa. Sept. 29, 2010) (quoting *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d

6

583, 588 (6th Cir. 2004)). This is because "a procedural due process claim is not complete unless and until the state fails to provide due process (which may occur after the wrongful action in question)." *Id.* at *9 n.5 (internal quotations omitted). However, "one's pursuit of post-deprivation remedies . . . should not be confused with administrative exhaustion requirements that exist in other contexts. Section 1983 contains no exhaustion requirement." *Id.* at *10 (quoting *Tristani v. Richman*, 609 F. Supp. 2d 423, 482–83(W.D. Pa. 2009)). Stated differently, a plaintiff does not need to exhaust administrative remedies when bringing a § 1983 claim, but the plaintiff's procedural due process claim is not final, and therefore not ripe, until the state fails to provide a procedure for redress of the plaintiff's harm.

Here, Defendants contend that Count III should be dismissed for three reasons. (ECF No. 37, at 2). Defendants argue that, first, Plaintiff Miller failed to demand a name clearing hearing in the Amended Complaint, and second, Plaintiff Miller "has in fact received a name clearing hearing in the form of the PLRB proceeding." *Id.* Third, Defendants argue that the stigma plus claim "is a procedural due process claim for which Plaintiff has failed to exhaust his administrative remedies." *Id.* Plaintiff Miller argues in response that a name-clearing hearing is not the only form of relief available for stigma plus claims, and that he has sufficiently pleaded a stigma plus claim. (ECF No. 46, at 3). However, Plaintiff Miller does not plead facts supporting an argument that the PLRB hearing is inadequate to redress the harm to his reputation—in fact, Plaintiff Miller does not plead *any* facts at all regarding the pending PLRB hearing, nor does he dispute the existence of the pending PLRB hearing in subsequent briefing. Because a PLRB hearing is pending, Plaintiff Miller's procedural due process stigma plus claim is not complete, and is therefore not ripe. Furthermore, because Plaintiff Miller does not allege that the PLRB hearing is inadequate to satisfy the demands of due process, the Court need not look beyond the

7

principal relief of a name-clearing hearing to the "theoretical possibility" of other remedies. Therefore, the stigma plus claim, in Count III of the Amended Complaint, fails and must be dismissed.

## IV. Conclusion

THEREFORE, Defendants' partial Motion to Dismiss is hereby GRANTED. Accordingly, Count III of the Amended Complaint is DISMISSED without prejudice.

IT IS SO ORDERED.

DATE March 27, 2019

Marilyn J. Horan
United States District Judge